UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Henry Furst,

Civ. File No. 00-136 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

The Sled Dogs Company,
d/b/a XDogs.com, Inc.,

Defendant.

---

This matter is before the Court upon Plaintiff's Motion for Summary Judgment. For the reasons set forth below, the Motion is granted in part and denied in part.

**BACKGROUND**

On June 5, 1997, Plaintiff Henry Furst ("Furst") purchased a secured convertible debenture from Defendant The Sled Dogs Company ("Sled Dogs"), which was in the business of distributing a winter version of in-line skates to sports equipment distributors. On November 5, 1997, Sled Dogs filed a petition for Chapter 11 bankruptcy. Pursuant to a subsequent Plan of Reorganization ("Plan") approved by the Bankruptcy Court on June 30, 1998, Furst became entitled to stock in the reorganized company, Xdogs.com ("XDogs"). The Plan Disclosure statement provided:

> The securities to be issued pursuant to the Plan may be freely transferred by most recipients thereof, and also resales and subsequent transactions in such securities are exempt from registration under federal and states [sic] securities laws, unless the holder is an "underwriter" with respect to such securities.

FILED SEP 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(Glover Aff. Ex. C at 15.) In a November 19, 1998 letter, Sled Dogs advised Furst that it would issue to Furst a stock certificate for 23,000 shares in exchange for Furst's debenture and a $15 fee.

On August 24, 1999, Furst tendered his debenture with the required $15 fee. On December 3, 1999, having not yet received his allotted XDogs shares, Furst demanded their immediate issuance, stating, "Your refusal to tender the certificates in freely tradeable form has and will cause me substantial damages since I want to sell the share [sic] immediately." (Glover Aff. Ex. K.) On December 16, 1999, Furst was issued the shares. However, the stock certificates bore Section 144 restrictive legends that prevented them from being freely transferred on the open market. As a result of the restriction on the shares, Furst argues that their value was reduced substantially.

Furst filed the present lawsuit, seeking a declaration that he was entitled to issuance of unrestricted XDogs shares and $143,750 in damages for breach of contract (i.e., the market value of the shares at the time of his December 3, 1999 demand, calculated using the highest sale price obtained on that date), or alternatively, a combination of unrestricted shares and damages representing the difference in their value from the market value of publicly-traded unrestricted XDogs shares at the time of his December 3, 1999 demand. Furst also seeks to recover his costs, disbursements, and prejudgment interest.

Sled Dogs has raised two defenses. First, it argues that Furst was an "underwriter," and therefore the Plan did not entitle Furst to unrestricted XDogs shares. Second, Sled Dogs argues that Furst's damages are speculative and, therefore, inappropriate.

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Enterprise Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## B. Liability

A confirmed bankruptcy reorganization plan constitutes a contract between the debtor and creditors. See 11 U.S.C. § 1141(a); Harstad v. First American Bank, 155 B. R. 500, 510 (D. Minn. 1993). It binds the debtor as well as any entity issuing securities under the plan. See 11 U.S.C. § 1141(a). Furst claims that Sled Dogs breached the contract embodied in the bankruptcy reorganization plan by issuing him restricted stock even though he was entitled to the issuance of unrestricted stock under the plan. Sled Dogs defends its issuance of restricted stock to Furst by alleging that Furst is an "underwriter" and, therefore, the Plan Disclosure did not entitle Furst to unrestricted shares. The bankruptcy code defines "underwriter" as follows:

> [A]n entity is an underwriter under section 2(11) of the Securities Act of 1933, if such entity–
>
> (A) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received or to be received in exchange for such a claim or interest;
>
> (B) offers to sell securities offered or sold under the plan for the holders of such securities;
>
> (C) offers to buy securities offered or sold under the plan from the holders of such securities, if such offer to buy is–
>
> (i) with a view to distribution of such securities; and
>
> (ii) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan; or
>
> (D) is an issuer, as used in such section 2(11), with respect to such securities.

11 U.S.C. § 1145(b)(1).

Sled Dogs raises two bases for finding that Furst is an underwriter, i.e., "[1] [i]f Furst purchased the subordinated debentures for the purpose of receiving stock in connection with the Chapter 11 proceeding, or [2] the [bankruptcy] Class D claimants are operating as a group." (See Def.'s Opp'n Mem. at 3.) However, Sled Dogs has provided no evidence supporting either allegation. Absent such evidence, the Court can only infer that Furst did not purchase with the intent of receiving stock in bankruptcy, because Furst bought the debenture five months before Sled Dogs even filed for bankruptcy. As to Sled Dogs' second allegation, Furst has stated that he has "no affiliation, contract or arrangement with any group of investors that owns shares of stock in the Sled Dogs Company." (Furst Aff. ¶ 8.) Sled Dogs has provided no contrary evidence; it cites only its own document requests and interrogatories inquiring about its allegations regarding Furst's relationship with other Class D claimants. (See Def.'s Opp'n Mem. at 3.) Absent any evidence linking Furst to other Class D claimants or Rule 56(f) affidavits setting forth a need for additional discovery, the Court can only conclude that Furst did not act in concert with other Class D claimants. See Liberty Lobby, 477 U.S. at 256; Krenik, 47 F.3d at 957 (noting that opposing party may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial). Accordingly, the Court grants summary judgment to Furst on the issue of Sled Dogs' liability.

**C. Damages**

Damages in a contract action should restore the wronged party to the position that party would have been in if the contract had not been breached. See Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn.1983). Furst seeks $143,750 for his lost profits from Sled Dogs' breach of the bankruptcy reorganization plan. This represents the market value of his stock on December 3, 1999 (based on that day's highest sale price) when he demanded immediate issuance of unrestricted shares and indicated that he desired to sell the shares immediately. Sled Dogs counters that Furst would not have realized $143,750 because XDogs stock is thinly traded and, therefore, Furst's sale of 23,000 shares would have depressed the market price. Consequently, Sled Dogs contends that Furst's damages are either too speculative and remote to warrant recovery or, alternatively, the damage calculation should not be based exclusively upon the actual market value for such shares.

Sled Dogs' first argument–that lost profits attributed to selling a thinly-traded stock are too speculative to warrant recovery–is unsupported by its cited law and its own evidence. (See Def.'s Opp'n Mem. at 6 (citing Cardinal Consulting Co. v. Circo Resorts, 297 N.W.2d 260, 266 (Minn. 1980).) Cardinal Consulting concerned the uncertainty in determining lost profits for a new business enterprise, for which no financial data is generally available, not the uncertainty arising from thinly-traded stocks. See id. at 267. Moreover, Cardinal Consulting actually upheld the award of lost profits, requiring only a "reasonably certainty" for such awards. See id. Indeed, Sled Dogs apparently concedes that sufficient certainty exists here. It has offered the opinion of its expert, Mr. Michael Niebuhr, a market maker

in Xdogs.com stock, who managed to find sufficient certainty to reach a conclusion as to how a stock sale by Furst on the date in question would have impacted the market value of Xdogs.com stock. (See Niebuhr Aff. ¶ 8.) Accordingly, the Court rejects Sled Dogs' argument that a thinly-traded stock is inherently too speculative to merit an award of lost profits.

Sled Dogs also argues that Furst's proposed measure of damages, i.e., the market value based on the day's highest sale price, is improper because the Xdogs.com stock was thinly traded. Therefore, it contends that Furst's sale of 23,000 shares on December 3, 1999 would have depressed the market price for Xdogs.com stock because only 138,800 shares changed hands that day. Furst counters by urging the Court to essentially ignore the stock's trading volume, noting that Minnesota has adopted the "New York Rule," under which a party that is wrongfully deprived of stock or other commodity subject to market fluctuations is entitled to the higher of either its value at the time of deprivation, or its highest intermediate value between notice of the deprivation and a reasonable time thereafter during which the stock could have been replaced had that been desired. See Fawcett v. Heimbach, 591 N.W.2d 516, 520 (Minn. Ct. App. 1999) (applying the New York Rule for a tort claim of conversion); McKinley v. Williams, 74 F. 94, 96 (8th Cir. 1896).

Neither party has cited any legal authority addressing whether, in applying the New York Rule, the Court should value a thinly-traded stock based exclusively on historical market values even though the shares being valued may be sufficient in number such that their sale may have affected the market price. In particular, the dissenters' rights cases cited

by Sled Dogs are not exactly on point. In such cases, a shareholder is typically dissenting from a particular transaction (e.g., a merger), triggering a statutory right of appraisal and disbursement of the intrinsic value of the dissenter's stock, which may or may not be the same as its market value, particularly for a thinly-traded stock. By contrast, the present case is wholly unrelated to the intrinsic value of Furst's shares. Here, the Court need only determine what price Furst could have obtained by selling his shares on the date in question. However, the Court notes that the New York Rule is not entirely inconsistent with Sled Dogs' position. While the New York Rule does assign the risk of market fluctuations over time to the party who wrongfully deprived the claimant of stock (suggesting that the high sale price of $6.25 on December 3, 1999 should serve as the basis for the damages calculation), it does not address market fluctuations resulting from the sale of a large block of thinly-traded stock. See id. Sled Dogs has presented evidence from a market maker of Xdogs stock that Furst's sale of 23,000 shares would have depressed the market price by about $2 per share from its high sale price of $6.25 per share on December 3, 1999. (See Niebuhr Aff. ¶ 8 and Ex. A.) This raises a genuine issue of material fact as to whether Furst's damages are properly measured by the historical market value of $6.25 per share, resulting in damages of $143,750, or by the reduced value of $4.25 per share ascribed by Mr. Niebuhr, resulting in damages of $97,750.[1]

---

[1] This determination will, in turn, depend upon the subsidiary factual issue of whether, and to what extent, the trading volume of 138,800 shares on December 3, 1999 could have supported a sale of Furst's 23,000 shares.

## CONCLUSION

The Court finds Sled Dogs liable for its breach of the bankruptcy reorganization plan, and rejects Sled Dogs argument that thinly-traded stocks are per se too speculative to merit awarding lost profits. A genuine issue of material fact exists, however, as to the proper measure of Furst's damages. The Court declines to rule on the issue of Furst's costs, disbursements, and prejudgment interest until the damages issue is resolved.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Henry Furst's Motion for Summary Judgment (Clerk Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART**; and

2. The Court finds Defendant The Sled Dogs Company, d/b/a XDogs.com, Inc., liable to Plaintiff Henry Furst for its breach of the bankruptcy reorganization plan.

Dated: September 15, 2000

Paul A. Magnuson
United States District Court Judge